# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| v. | : | |
| CO IONATA, CO ROBERTSON, CO COSTANZO, CO HARROR, SGT. BROWN, LT TAYLOR, J. YODIS, JOHN WETZEL, PA DEPARTMENT OF CORRECTIONIS, UNKNOWN CORRECTIONAL OFFICERS, CHIEF SAFETY AND ENVIRONMENTAL PROTECTION DIVISION and SCI GRATERFORD'S (CISM) CORRECTIONS INSTITUTIONAL SAFETY MANAGER | : | NO. 19-1723 |

## MEMORANDUM OPINION

**Savage, J.**                                                              **February 19, 2020**

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action asserting that the defendants violated the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Eighth and Fourteenth Amendments.[1] He also brings claims under state law and for injunctive and declaratory relief. He has sued the Pennsylvania Department of Corrections (DOC) and several of its officers and employees.[2]

Moving Defendants[3] seek dismissal of the complaint for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA) and for

---

[1] May 29, 2019 Order (ECF No. 5). This is the 46th of 49 civil actions that Talley has filed in the federal district courts of Pennsylvania against prison personnel since 2015.

[2] Compl. ¶¶ 41-77 (ECF No. 2).

[3] Moving Defendants include the DOC; Secretary Wetzel; Hearing Examiner Yodis; Lieutenant Taylor; Sergeant Brown; and Corrections Officers Ionata, Costanzo, Harrar and Robinson. The correct titles and spellings are supplied by Moving Defendants. Chief of Safety and Environmental Protection Division (CSEPD) Robert McSurdy was dismissed on December 30, 2019, after Talley failed to respond to

1

failure to state a claim. They also invoke qualified and sovereign immunity. We shall dismiss those claims for which Talley failed to exhaust his administrative remedies and dismiss his remaining federal claims for failure to state a claim. We shall decline to exercise supplemental jurisdiction over his state claims.[4]

## Background[5]

On August 22, 2017, while Talley was an inmate at the DOC's State Correctional Institution (SCI) at Graterford, Ionata came to his cell and told him that to receive his breakfast tray he had to stand at the back of the cell and face the wall with his hands on his head.[6] Talley was denied his breakfast tray.[7] In response, Talley covered the camera in his cell and the cell door, and remained nonresponsive until Taylor, the ranking officer on duty, came to his cell.[8] Talley complained that the other inmates had been provided

---

his motion. CSEPD Mot. to Dism. (ECF No. 28); Dec. 30, 2019 Order. (ECF No. 30). Talley also sues Unknown Corrections Officers and Graterford's Corrections Institutional Safety Manager (CISM). These defendants are not parties to the motions to dismiss. However, where a court grants other defendants' motion to dismiss, the court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)). A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in a similar position to the moving defendants. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). Therefore, to the extent the deficiencies cited in the motions to dismiss also apply to these defendants, we consider them.

[4] Talley argues that mandatory screening of his complaint under 28 U.S.C. §§ 1915(e) and 1915A prohibits defendants from later filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Pl.'s Brief Response to Defs.' Mot. to Dismiss at 6-8 (ECF No. 21). *See also* May 29, 2019 Order. He is wrong. Defendants may move to dismiss any claims that survive the court's preliminary screening. *See, e.g., Moore v. Middlesex Cty. Prosecutors Office*, 738 F. App'x 100, 102 (3d Cir. 2018) (noting district court dismissed claim under Rule 12(b)(6) after allowing it to proceed beyond § 1915A screening).

[5] The following facts are taken from the detailed complaint and attached exhibits, and are deemed true for the purposes of the motion.

[6] Compl. ¶¶ 10-11.

[7] *Id.* ¶ 12. Talley does not state whether this denial was due to his refusal to follow Ionata's instructions.

[8] *Id.*

2

their trays, but, as punishment for flooding his cell on the previous day, he was not provided his.[9] Taylor directed Talley to prepare to change cells.[10] Talley refused.[11] Taylor assembled an extraction team who escorted Talley to the adjacent cell.[12]

After Taylor and the extraction team left, Robinson, Brown and Ionata came to Talley's cell.[13] Robinson grabbed his crotch and told Talley "what [he] could suck."[14] Robinson later refused Talley his lunch tray.[15] At dinnertime, Costanzo told Talley that to receive his tray he had to stand at the back of the cell, face the wall with his hands on his head and bark.[16]

The next morning Talley asked Taylor to ensure that he received his breakfast tray, and Taylor agreed.[17] When Harrar arrived with the tray, he also told Talley that he had to stand at the back of the cell, face the wall with his hands on his head and bark.[18] Talley "blacked out."[19] He told Harrar he was contemplating setting a fire in his cell, to which Harrar responded, "Kill yourself then!"[20] Talley began setting items in his cell on fire.[21] Brown, Harrar, Ionata and the Unknown Corrections Officers came to his cell, but Talley

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 16.
[14] *Id.*
[15] *Id.* ¶ 17.
[16] *Id.* ¶ 18.
[17] *Id.* ¶ 20.
[18] *Id.* ¶ 21.
[19] *Id.*
[20] *Id.* ¶ 22.
[21] *Id.*

3

used a blanket to prevent them from extinguishing the fires.[22] Brown told Talley that no one would stop him from killing himself and the corrections officers walked away.[23]

Talley set another fire.[24] The corrections officers returned and attempted to extinguish it, but Talley again blocked them.[25] He told them, "I'll kill myself before I let y'all kill me!"[26] Ionata told Talley to light more items on fire and the corrections officers walked away.[27]

Talley set a third round of fires.[28] He was removed from his cell and taken to medical triage.[29] Talley claims that because his housing area lacked sprinklers his cell had "filled with a dangerously hazardous amount of smoke" and he had "almost gag[ged]."[30]

Ionata charged Talley with misconduct for setting the fires.[31] Talley claimed that the incident was caused by his mental illness.[32] Yodis, after reviewing the footage from Talley's cell camera and the officers' hand-held camera, found him guilty and sentenced him to a period of disciplinary custody and loss of his job.[33]

Talley alleges that the DOC and Wetzel violated his rights under the ADA, the RA,

---

[22] *Id.*
[23] *Id.* ¶ 23.
[24] *Id.* ¶ 24.
[25] *Id.* ¶ 25.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* ¶ 28.
[30] *Id.* ¶ 24.
[31] *Id.* ¶ 29 & Ex. 2 at 1.
[32] *Id.* ¶ 31 & Ex. 2 at 3.
[33] *Id.* ¶¶ 32-35 & Ex. 2 at 6.

4

and the Eighth and Fourteenth Amendments by failing to equip the area of the prison in which he was housed with sprinklers.[34] He alleges that the DOC, Wetzel and Yodis violated his rights under these Acts and Amendments and breached the settlement agreement in another matter[35] by punishing him for setting fires, which Talley claims was self-injurious behavior.[36] Talley alleges that Ionata, Robinson, Costanzo, Harrar and Taylor violated his Eighth and Fourteenth Amendment rights and committed an unspecified state tort by denying him meal trays.[37] He alleges that Brown, Ionata, Harrar and the Unknown Corrections Officers violated his Eighth Amendment rights when they did not remove him from his cell after he started the fires.[38] Talley alleges that CISM violated his Eighth Amendment rights by failing to provide DOC employees with adequate fire and evacuation training.[39] He alleges that Wetzel violated his Eighth Amendment rights by failing to train corrections officers how to deal with mentally ill inmates.[40] He also alleges that Robinson sexually harassed him when he told Talley to suck his penis.[41]

**Standard of Review**

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that

---

[34] *Id.* ¶ 41

[35] *Disability Rights Network of Pa. v. Wetzel*, No. 1:13-CV-00635 (M.D. Pa. Jan. 9, 2015).

[36] Compl. ¶¶ 42-43.

[37] *Id.* ¶¶ 44-45.

[38] *Id.* ¶

[39] *Id.* ¶ 46.

[40] *Id.* ¶ 47.

[41] *Id.* ¶ 49.

5

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

**Analysis**

*Federal Claims – Exhaustion under the PLRA*

Before filing suit challenging prison life under any federal law, a prisoner must exhaust all available administrative remedies. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983 or any other federal law] until administrative

6

remedies as available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available steps in the process. *Id.*; *see also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The exhaustion requirement is mandatory. A court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 136 S. Ct. at 1856. The only exception is where an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if the administrative remedies are not available, there is nothing to exhaust.

Pennsylvania Department of Corrections Administrative Regulation (DC-ADM) 804 mandates that inmates "must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based."[42] Rather than follow this procedure, Talley submitted an Inmate Written Statement (Statement) to Lieutenant Andrew Reber pursuant to DC-ADM 001 on August 24, 2017.[43] Reber told Talley that it would be "sufficient to preserve the incidents therein" until he received a response from the Office of Special Investigations and Intelligence, which never occurred.[44] For purposes of this motion, Moving Defendants concede that Talley's Statement satisfies the PLRA's

---

[42] DC-ADM 804.VI.A.8.

[43] Compl. ¶ 52. Inmate Written Stmt. (ECF No. 15-3). DC-ADM 001 provides procedures for handling inmate allegations of abuse. DC-ADM 001.B.2.

[44] Compl. ¶¶ 54, 60.

administrative exhaustion requirement.[45]

Moving Defendants point out that Talley's Statement does not include any allegations about the prison's lack of sprinklers or his misconduct charge and conviction.[46] A grievance must contain the subject matter of the lawsuit to constitute proper exhaustion because it "must at least alert[ ] the prison to the nature of the wrong for which redress is sought." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 295 (3d Cir. 2016). Talley's Statement makes no reference to sprinklers. Thus, his claims based on their absence shall be dismissed due to a failure to exhaust administrative procedures.

Talley's claims based on his misconduct and subsequent punishment are more complicated. Talley did not include these allegations in his Statement because he had not been served with the misconduct until September 9, 2017, after he had submitted the Statement.[47] Nonetheless, DC-ADM 001 required the prison to consider his misconduct when investigating the denial of Talley's breakfast trays and fires he lit as set forth in his Statement.[48] In doing so, it would have seen that Talley complained not only about the underlying incident, but that he also opposed the misconduct and punishment arising from it.[49] Moving Defendants do not address Talley's contention that his claims regarding his misconduct and punishment were exhausted by virtue of the prison's investigation. Thus, we decline to dismiss these claims for failure to exhaust administrative remedies. *See*

---

[45] Defs.' Mot. to Dismiss at 9 (ECF No. 15) (citing *McCain v. Wetzel*, No. 12-0789, 2018 WL 3439204, at *6 (M.D. Pa. July 17, 2018)).

[46] *Id.* at 9-10.

[47] Compl. ¶ 56.

[48] DC-ADM 001.C.1.c(6) (Security Office's investigation of abuse allegations must include review of inmate's misconduct reports); DC-ADM 001.C.1.d(7) (investigative report must include copies of misconduct reports related to the incident). *See also* Inmate Written Statement.

[49] Compl. Ex.2 at 3.

*Hurst v. Snider*, 530 F. App'x 168, 169 n.3 (3d Cir. 2013) ("Given the uncertainty regarding exhaustion, we have chosen to address the substance of Hurst's claims.") (citing *Nyhuis*, 204 F.3d at 69 n.4).

## ADA and RA Claims

The ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in the provision of services, programs and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). The RA prohibits discrimination by entities receiving federal funding and is interpreted similarly to the ADA. *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997). To state a claim under the ADA and the RA, a plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA and the RA. 29 U.S.C. § 705(9)(A); 42 U.S.C. § 12102(1)(A).

Talley alleges that the DOC, Wetzel and Yodis violated his rights under the ADA and the RA when they punished him for setting fires in his cell. He claims that pursuant to DC-ADM 801, he should not have been disciplined for these actions because they constituted self-injurious behavior.[50] Talley made this argument at his misconduct hearing to Yodis, who was tasked with making findings of fact, rendering a verdict and

---

[50] DC-ADM 801.C.1 ("An inmate who . . . engages in self-injurious behavior . . . shall not be subjected to discipline for that behavior.").

9

imposing appropriate punishment.[51] Yodis rejected the argument and found Talley guilty of arson, threatening a DOC employee, and refusing to obey an order.[52]

The plaintiff in *Scherer v. Pennsylvania Department of Corrections* made a similar argument. No. 3:2004-191, 2007 WL 4111412, at *44 (W.D. Pa. Nov. 6, 2007) (quoting *Yeskey*, 524 U.S. at 209-10) (internal quotations omitted). In that case, an inmate, who was placed in the prison's Restricted Housing Unit (RHU) as punishment for misconduct arising from his mental illness, sued under the ADA. *Id.* The court stated that because his misconduct may have indicated a need for treatment, the prison's failure to inform staff of his mental illness may have violated the ADA, if the failure resulted in "the denial of necessary mental health treatment in response to his misconduct." *Id.* However, the inmate could not maintain a claim based upon his punishment for misconduct arising from a mental illness. As the court explained, "[m]ental illness may contribute to misconduct but his placement was based upon misconduct, not because of a policy that those prisoners diagnosed with mental illness are to be housed in the RHU." *Id.*

Talley does not allege that he was denied treatment or punished for his mental illness. Nor does he allege that the DOC has a policy of placing inmates with mental health issues in disciplinary segregation. Rather, the documents he attaches to his complaint indicate he was punished because he set multiple fires in his cell, refused to put them out and threatened to "fuck[ ] up" Ionata if he opened Talley's cell door.[53] The discipline for this misconduct did not violate the ADA or the RA.

---

[51] Compl. Ex. 2 at 3, 6.

[52] *Id.* Ex. 2 at 1, 6.

[53] *Id.* Ex. 2 at 1.

10

*Section 1983 Claims*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The DOC, as a state agency, is not a "person" under § 1983. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 847 (3d Cir. 2014). Nor do the facts pled by Talley establish a plausible constitutional violation against any individual defendant.[54]

Eighth Amendment Claims

Talley claims that Ionata, Robinson, Costanzo, Harrar and Taylor violated his Eighth Amendment rights when they refused him four consecutive meals over a two-day period.[55] We analyze this claim as one challenging the conditions of his confinement. *Mestre v. Wagner*, No. 11-2480, 2012 WL 300724 (E.D. Pa. Jan. 31, 2012).

The Eighth Amendment proscribes the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. Prison conditions are cruel and unusual if they deprive inmates of basic human needs and life's necessities. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000). The test is whether the conditions, together or alone, function to deprive the inmate "of the minimal civilized measures of life's necessities." *Id.*

To state a claim challenging conditions of confinement, an inmate must allege facts that would, if proven, establish that both the deprivation was objectively serious and that

---

[54] Construing the complaint in the light most favorable to Talley, we assume that although he sues the individual defendants in their official capacity under the ADA, he also sues them in their personal capacity under § 1983. A claim for damages against state officials in their official capacity is the same as a claim against the employing entity, but officials sued in their personal capacity are "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 22-23, 25, 27 (1991).

[55] Compl. ¶¶ 12, 17-18, 21.

11

a prison official had a sufficiently culpable state of mind, that is, acted with deliberate indifference. *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Whether the harm is objectively serious is measured by society's view of the risk, that is, "whether 'it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (emphasis omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Restrictive or harsh conditions are part of prison life. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only conditions that deprive the prisoner of one of life's necessities, such as food, water, clothing, shelter, and medical care are unconstitutional. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Thus, unless the condition is objectively serious, there is no unconstitutional deprivation.

A prisoner must also allege facts, not conclusions, showing that a prison official acted with deliberate indifference to his health or safety. *Beers–Capitol*, 256 F.3d at 125. The prison official must actually have known or been aware that the condition created an excessive risk to the prisoner's health or safety. *Id.* Actual, not constructive, knowledge is required. A prison official can only be liable under the Eighth Amendment if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 131 (quoting *Farmer*, 511 U.S. at 837). It is not enough that he should have known. *Id.* at 133.

Prisons must provide adequate food. *Laufgaus v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008). A prisoner's diet must be adequate to maintain health and served in a sanitary manner. *Jones v. Beard*, No. 10–5544, 2011 WL 3611470, at *8 (E.D. Pa. Aug.16, 2011) (citing *Maldonado v. McFaden*, No. 94–1477, 1994 U.S. Dist. LEXIS

16837, at *11 (E.D. Pa. Nov. 23, 1994)). "'A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment.'" *Kennedy v. Drumm*, No. 09–3924, 2010 WL 3824072, at *10 (D.N.J. Sept. 23, 2010) (quoting *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)).

The deprivation of four meals over two days does not rise to the level of an Eighth Amendment violation absent awareness by the official that the deprivation poses a risk to the inmate's health and safety. *See Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) (denial of nine consecutive meals over three days did not violate Eighth Amendment). Here, Talley alleges no resulting health effects or weight loss from lack of food, let alone that the officials subjectively appreciated any risk posed to him.

Talley alleges that Brown, Ionata, Harrar and the Unknown Corrections Officers violated his Eighth Amendment rights when they "made no attempt at all" to remove him from his cell after he set fires in it.[56] But, Talley's own averments contradict this assertion. After he set the first fires, these defendants attempted to put it out, but he blocked their fire extinguisher with a blanket.[57] He set another fire, which they attempted to extinguish, but Talley again blocked their fire extinguisher.[58] After Talley set yet another round of fires, Taylor, Brown, Harrar, Ionata and the Unknown Corrections Officers removed him from his cell and took him to medical triage.[59] The entire incident lasted approximately seven minutes.[60] The defendants did not act with deliberate indifference to Talley's health

---

[56] Compl. ¶ 48.

[57] *Id.* ¶ 22.

[58] *Id.* ¶¶ 24-25.

[59] *Id.* ¶¶ 27-28.

[60] *Id.* Ex. 2 at 5.

13

and safety in addressing the fires that he started in his cell. On the contrary, in his own words, he pleads that the defendants attempted to prevent injury to him.

Talley alleges that the DOC, Wetzel and Yodis violated his rights under the Eighth Amendment by punishing him for the self-injurious behavior of setting fires.[61] It appears Talley contends that Yodis' determination that his actions were not protected self-injurious behavior was inconsistent with the Settlement Agreement and General Release (Settlement Agreement) in *Disability Rights Network of Pennsylvania v. Wetzel*.[62] But, even if Talley is correct, the breach of the Settlement Agreement would not establish a constitutional violation. As noted, Talley was charged with and convicted of a misconduct because he set fires in his cell and threatened to "fuck[ ] up" Ionata.[63] He alleges no facts showing that he was punished because he is mentally ill. On the contrary, his allegations show that he was disciplined for misconduct.

Talley also asserts Eighth Amendment supervisory liability claims against CISM, the DOC and Wetzel. To state a claim for supervisory liability under § 1983, the plaintiff must identify the specific supervisory practice or procedure the supervisor failed to follow, and show that: "(1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol*, 256 F.3d at 134. An allegation that the injury would not have occurred had the supervisor "done more" is insufficient. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118

---

[61] *Id.* ¶ 43.

[62] *Id.*

[63] *Id.* Ex. 2 at 1.

(3d Cir. 1989)). The plaintiff must identify specific acts or omissions that show deliberate indifference and establish a connection between the supervisor's act or omission and the injury. *Id.*; *Collins v. Williams*, 575 F. Supp. 2d 610, 615 (D. Del. 2008) (citing *Sample*, 885 F.2d at 1118)).

Talley claims that CISM violated his Eighth Amendment rights by failing to provide DOC employees with adequate fire and evacuation training and supervision.[64] But, Talley alleges no injury. Although he concludes that the fires he started "nearly" resulted in his death due to CISM's failure to supervise the DOC's corrections officers, the only fact he alleges in support of this conclusion is that the smoke from the fires caused him to "almost gag."[65] Talley was exposed to smoke from the fires for a maximum of seven minutes, and he attributes this exposure to the lack of a sprinkler system, not CISM's failure to supervise.[66] He alleges no burns or other injuries suffered from trying to escape the fires. Further, Talley's smoke inhalation resulted from his own efforts to block the responding corrections officers who attempted to extinguish the fires, not CISM's failure to supervise them. Nor does Talley allege that CISM was aware of and indifferent to an unreasonable risk posed to him.

Talley also alleges that the DOC and Wetzel failed to supervise DOC employees to ensure that he was not punished for setting fires, which he claims were acts of self-injurious behavior.[67] DOC policies prohibit disciplining an inmate for self-injurious

---

[64] Compl. ¶ 46.

[65] *Id.* ¶ 24.

[66] *Id.* ¶ 24 & Ex. 2 at 5.

[67] *Id.* ¶¶ 42, 47.

15

behavior.[68] The DOC definition of self-injurious behavior includes "setting fire to self."[69] Talley set toilet paper, not himself, on fire.[70] Self-injury also includes any "socially unaccepted behavior that is generally a response to a psychological crisis that results in tissue damage and which occurs in the absence of subjective suicidal intent . . . ."[71] However, even if the denial of Talley's breakfast trays precipitated a psychological crisis, he alleges no tissue damage resulting from the fires he set in response. At Talley's misconduct hearing, Yodis found that Talley's actions did not constitute protected self-injurious behavior. Talley was not punished for his mental illness. He was disciplined for arson and threatening physical harm to corrections officers.

Fourteenth Amendment Claims

Talley alleges that the DOC, Wetzel and Yodis' punishment for setting fires violated the Fourteenth Amendment's Privileges and Immunities and Due Process Clauses.[72] He has not stated a cause of action under either clause.

The Privileges and Immunities Clause reads: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2. It "prevents a State from discriminating against citizens of other States in favor of its own." *Lee v. Minner*, 458 F.3d 194, 197 (3d Cir. 2006) (quoting *Hague v. CIO*, 307 U.S. 496, 511 (1939)), *abrogated on other grounds by McBurney v. Young*, 569 U.S.

---

[68] DC-ADM 801.C.1.

[69] DC-ADM 801.C.1.c(1). The DOC's definition does not purport to list every possible type of self-injurious behavior.

[70] Compl. Ex. 2 at 5.

[71] DC-ADM 801.C.1.a.

[72] Compl. ¶¶ 42-43.

16

221 (2013). Talley does not allege that he is a citizen of a state other than Pennsylvania, let alone that he was treated differently for that reason.

Talley also alleges that the DOC, Wetzel and Yodis violated the Fourteenth Amendment's Due Process Clause.[73] The due process analysis starts with determining whether the interest asserted is one that is protected by the Fourteenth Amendment. *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine what process is necessary to protect it. *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, the plaintiff must establish that he had a protected interest that triggered due process rights. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a protected interest).

Talley claims that he was deprived of property and liberty interests.[74] He does not specify what these interests were. His punishment consisted of a 60-day period of disciplinary custody and the loss of his prison job.[75] "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest*." Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). The sanctions imposed upon Talley are insufficient to trigger due process protections. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement

---

[73] *Id.* ¶ 43.

[74] *Id.*

[75] *Id.* Ex. 2 at 6.

17

in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purposes of triggering due process protection]." (quoting *Sandin*, 515 U.S. 472 (1995))); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [...] by a court of law" and does not constitute a due process violation) (quotation omitted). Also, Talley does not have a property interest in his prison job. *See Burns*, 642 F.3d at 171. Therefore, Talley has not pleaded a due process violation.

Talley also asserts an equal protection violation under the "'class-of-one' theory" against Ionata, Robertson, Costanzo and Harrar because they did not require other inmates to face the wall, place their hands on their head and bark to receive their meal trays.[76] "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

According to Talley, he has a "propensity to employ fire in/during acts of [self-injurious behavior]," which poses a risk not only to himself but also to prison staff.[77] He fails to allege that the purportedly similarly situated inmates on his cell block had similar histories of such behavior. Given this history, Ionata, Robertson, Costanzo and Harrar had a rational basis for requiring him to face the wall with his hands on his head.

---

[76] *Id.* ¶ 50.

[77] *See id.* ¶ 42.

The defendants concede that requiring Talley to bark like a dog to obtain his food "serves no security purpose."[78] But, *de minimis* constitutional violations are not actionable. *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 895 (7th Cir. 2012) (Posner, J.) (citations omitted). "[C]ourts generally agree that only *egregious* class-of-one cases should be actionable in the name of the Constitution . . . ." *Id.* (emphasis in original) (citation omitted). This case is not one.

### State Law Claims

"Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also* 28 U.S.C. § 1367(c)(3). No exceptions apply here.

There is no reason to retain jurisdiction over Talley's state law claims, which he may assert in state court. *See, e.g., Segers v. Williams*, No. 13-2413, 2014 WL 285078, at *5 n.9 (E.D. Pa. Jan. 27, 2014). Thus, we shall decline to exercise supplemental jurisdiction.

### Injunctive and Declaratory Relief Claims

Talley seeks a declaration that it is unconstitutional for him to be charged with misconduct or punished for his "ongoing mental health symptoms . . . ."[79] Similarly, he seeks an injunction compelling the DOC and Wetzel to notify prison staff, including

---

[78] Defs.' Mot. to Dism. at 23. Talley does not plead that he complied with the corrections officers' legitimate instructions.

[79] Compl. ¶ 66.

19

hearing examiners, that he cannot be charged or punished for setting fires because they constituted self-injurious behavior. But, Talley does not plead that he was charged or punished due to his mental illness. His allegations show that he was charged and punished because he set fires in his cell and threatened prison staff.[80] Therefore, he is not entitled to declaratory and injunctive relief.

## Conclusion

Because Talley failed to exhaust his administrative remedies under the PLRA as to his claims regarding the lack of sprinklers, we shall dismiss those claims as unexhausted. We dismiss his remaining federal claims for failure to state a plausible claim. We decline to exercise supplemental jurisdiction over his state law claims. Therefore, this action will be dismissed with prejudice as to all defendants as to the federal claims and without prejudice as to the state law claims.

---

[80] *Id.* Ex. 2 at 1.